UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
JAMES M. KERNAN,

                 Plaintiff,             VERIFIED COMPLAINT

  -against-

                                         Civil Case No. 6:11-cv-1212
BENJAMIN M. LAWSKY in his official capacity as          (NAM/DEP)
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES, formerly
known as the NEW YORK STATE DEPARTMENT OF
INSURANCE and UNITED STATES OF AMERICA,

                 Defendants.
--------------------------------------------------------------------

Plaintiff by his attorneys Kernan and Kernan, P.C., complaining of the Defendants alleges:

## INTRODUCTION

1. This is an action for declaratory judgment, seeking: 1) to declare a part of United States statute, 18 U.S.C. §1033, unconstitutional in application as applied to Plaintiff, and 2) declaratory and injunctive relief against the New York State Department of Financial Services, formerly known as the New York State Department of Insurance ("the Department") on grounds that Plaintiff James M. Kernan ("Mr. Kernan" or "Plaintiff") Plaintiff's conviction for violating § 1033 (e) (1) (B) does not: 1) require him to divest his interest in the Oriska Insurance Company ("Oriska"), a company in which he has an indirect controlling interest, 2) debar him from employment in the insurance industry, or 3) require him to obtain a waiver pursuant to § 1033 (e) (2) as a prerequisite to such employment. Plaintiff seeks to enjoin the Department from taking any action, either to require him to divest his interest in Oriska or to refrain from engaging in the business of insurance as the result of his conviction.

1

2. On March 20, 2009, Plaintiff pled guilty to violating § 1033 (e) (1) (B), which imposes criminal penalties for "willfully permit[ting] the participation [of an individual who has been convicted "of any criminal felony involving dishonesty or a breach of trust…," §1033 (e) (1) (a).

3. Specifically, Plaintiff admitted that he had permitted Robert Anderson, a convicted felon, to be engaged to perform services for insurance companies under Plaintiff's control.

4. As a result of the conviction of the Plaintiff, the defendant Department is seeking to prohibit Plaintiff from engaging in the business of insurance.

5. The actions of the Department to prohibit Mr. Kernan from engaging in the business of insurance, based upon his conviction under § 1033 (e) (1) (B), are based upon an incorrect legal interpretation and analysis of the statute and violate his right to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

## Jurisdiction and Venue

6. The court has the authority to render a declaratory judgment regarding the "rights and other legal relations" of the Plaintiff with respect to the interpretation and analysis of § 1033, pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201).

7. In addition, the court has jurisdiction over this action as a federal question because it arises "under the Constitution and laws... of the United States" (28 U.S.C. § 1331) and under 28 U.S.C. § 1343 (a) (3) and 42 U.S.C. § 1983, because Plaintiff is asserting that a defendant state actor has deprived him of his rights under the United States Constitution.

8. Venue is proper in the Northern District of New York because of the residence of Plaintiff and pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District. Specifically, Plaintiff's criminal convictions

occurred in the Northern District and past and proposed future activities with the insurance businesses in question have and will occur in the Northern District.

## Parties

9. Plaintiff was the President of Oriska from 1990 until he relinquished the presidency in 2008 after his indictment. He is presently seeking the consent of the New York State Department of Insurance, now known as the Department of Financial Services, to engage in the business of insurance pursuant to 18 U.S.C. § 1033 (e) (2). Plaintiff resides at XXXXXXXXXXXXXX, Oriskany, New York within the Northern District of New York

10. The United States of America is named as a defendant because this is an action involving the constitutionality of a statute, enacted by the Congress of the United States.

11. On October 3, 2011, the State of New York created a new department, the Department of Financial Services, which assumed the responsibilities and authority of the former New York State Department of Insurance which had formerly been responsible for the regulation and oversight of insurance companies, including Oriska and whose actions and omissions are described at length in this Complaint. Benjamin M. Lawsky, the Superintendent of the New York State Department of Financial Services, (referred to as "the Department" in this Complaint), is named in his official capacity because the lawsuit seeks to enjoin the Department from proceeding with administrative actions against Plaintiff.

## Background

### A. The purchase of Oriska by IPA

12. In February 2003, Plaintiff acquired an 82.12% ownership interest in Oriska Insurance Company ("Oriska") by purchase of IPA Acquisitions, Inc. ("IPA") pursuant to a stock

3

purchase agreement with Trust of the Empire State Highway Contractors Association ("Contractors Association")

13. From 1990 until 2008, Plaintiff was the President of Oriska.

14. In late July 2002, Plaintiff learned that Mr. Anderson, who was involved with IPA, had a criminal record.

15. By letter dated August 4, 2002, Plaintiff promptly notified the Department of the criminal history issues involving Mr. Anderson.

16. Thereafter IPA withdrew its Form A application to the Department.

17. In 2002, IPA had acquired another insurance company, the Insurance Company of the Americas ("ICA"), which had been established in Florida.

18. Plaintiff determined to acquire IPA and then IPA proceeded to purchase of the Contractors' Association stock in Oriska.

19. On November 21, 2002, Plaintiff met with several representatives of the Department, including Paul DeRobertis and Rudolpho Altre and explained the history of the events of 2002 leading up to Plaintiff's plan to purchase IPA and Oriska by IPA.

20. At that meeting, Plaintiff presented a review of all of the relevant issues, Plaintiff's previous disclosures regarding Mr. Anderson, and the status of disputes that resulted from the sale of workers compensation policies, as well as responded to inquiries of the Department.

21. At the meeting, Plaintiff presented certain documents. Plaintiff also submitted a "recap" of the presentation that he made. This recap provides a detailed description of all of the relevant events, disclosures and proposed solutions, together with copies of the power point slides that he had presented.

22. The recap demonstrates that Plaintiff made full disclosure regarding Anderson.

23. The recap also described future cooperation between Plaintiff and Mr. Anderson, and described the future cooperation and engagement of Anderson regarding certain aspects of Oriska business and the transition of ownership of IPA to Plaintiff.

24. IPA acquired Oriska in January 2003 with the approval of the Department.

### B. Engaging Mr. Anderson as a consultant

25. As Plaintiff had indicated to the Department in November 2002, Mr. Anderson was retained as a consultant, by the Kernan Professional Group. This agreement specifically provided, as Plaintiff had previously assured the Department, that Mr. Anderson would not exercise any control, either directly or indirectly, over the activities of Oriska, IPA or ICA.

26. Since August 2002, the Department has been well aware that Mr. Anderson would be engaged to perform consulting services pertaining to the business of insurance.

27. As Plaintiff had promised the Department, he wrote to Mr. Roddenberry of the Florida Department of Insurance on January 8, 2003. Plaintiff characterized his letter as "respectfully request[ing] the opportunity to petition the Department, through you, for consent to utilize Mr. Anderson as a consultant for the limited purpose of completion of the implementation and testing of the workers compensation policy management and claim system." Plaintiff described Mr. Anderson as "an excellent resource" who could provide valuable information to "understand and protect against fraud and dishonesty which seems to be chronic in the employee leasing industry."

28. Plaintiff also stated in his letter to Mr. Roddenberry that "Mr. Anderson, who has paid for his dishonest act, has helped to identify the pitfalls and risks prevalent in the employee industry and helped to design our systems to combat these problems."

29. Mark Tract, a partner in the Rosenman law firm that represented IPA, wrote to the Florida Department of Insurance on February 3, 2003, in reference to Plaintiff's January 8 letter. Mr. Tract reiterated that Mr. Anderson would not exercise any control over either Oriska, ICA or IPA, expressed his opinion that Mr. Anderson's consulting agreement would not violate an earlier consent order with the Florida agency and "respectfully request[ed] the Department's concurrence in our understanding that Plaintiff's January 8, 2003 letter was unnecessary."

30. Mr. Tract, an experienced lawyer in a large national law firm, was unaware that the retention of Mr. Anderson to perform services related to the practice of insurance violated the explicit provisions of 18 U.S.C. § 1033 (e) (1) (B), because of Mr. Anderson's past criminal history.

31. Similarly, it appears that the Insurance Departments of both Florida and New York were unaware that the retention of Mr. Anderson violated federal law as they never reacted or provided any notice of any possible impropriety or resulting problems.

32. In 2004, Mr. Anderson himself filed an application with the Department for a waiver of the ban on employment within the insurance industry, pursuant to § 1033 (e) (1) (E) (2) by which the Department was again fully apprised when Anderson himself filed an application to be engaged in the business of insurance listing his work with Oriska as a consultant, and was supported by an Affidavit from Plaintiff.

33. It is therefore clear that the Department was well aware that Mr. Anderson was employed as a consultant, and was performing services pertaining to the business of insurance.

34. Although Plaintiff, as described below, ultimately pled guilty to a violation of § 1033 (e) (1) (B) for permitting Mr. Anderson to participate in the business of insurance, it is clear that everyone involved in such participation, including his experienced counsel and the two regulatory agencies, were aware of Plaintiff's actions, and did not take any action to advise

Plaintiff that his engaging of Mr. Anderson was improper, unauthorized or, more significantly, was in violation of a federal criminal statute.

35. Although Mr. Anderson had some involvement in the business of insurance, he did not exercise any control over the activities of Oriska or over any insurance company owned or controlled by Oriska.

36. The Department was fully aware of the criminal history of Mr. Anderson and never objected to Mr. Anderson's involvement with Oriska; nor is there any allegation that Plaintiff's engagement of Mr. Anderson involved any fraud or breach of trust. No policyholder, beneficiary, nor anyone else, was injured by KPG's engaging of Mr. Anderson as a consultant, nor is there any allegation that any conduct of Plaintiff was in any way dishonest or untrustworthy.

### C. Department's proceeding against Oriska

37. In 2006, the Department attempted to place Oriska in receivership because of an alleged failure to maintain an adequate statutory surplus on its workers compensation policies.

38. The Department's proceeding was ultimately resolved by a court stipulation in December 2007. That stipulation included a recitation by the Department that it did not allege, and that the court was not making any finding, that the management of Oriska in general, and Plaintiff in particular, were in any way untrustworthy or dishonest.

### D. Criminal proceedings against Plaintiff

39. On January 30, 2008, Plaintiff, together with Robert Anderson, was indicted by a grand jury sitting in the United States District Court for the Northern District of New York.

40. Plaintiff James M. Kernan and Marlene Kernan vehemently assert that they are innocent of all of the charges alleged in the superseding indictment, with the exception of counts 12 and

13, which alleged that they permitted Mr. Anderson any known felon to engage in the business of insurance. Plaintiff James M. Kernan and Marlene Kernan pled guilty to permitting Mr. Anderson, whom they knew to have a criminal record, to engage in the business of insurance in violation of § 1033 (e) (1) (B).

41. Plaintiff James M. Kernan was sentenced to probation, paid a $250,000 fine and performed 400 hours of community service with disabled veterans. Marlene Kernan paid a $183,000 fine.

42. During the proceedings to enter the guilty plea, the Assistant U.S. Attorney Edward Broton set forth the facts that the government claimed that it would have been able to prove at trial. The government claimed and Plaintiff did not dispute that it would have proved that Mr. Anderson had relocated from California to Oriskany, New York to go into business with Plaintiff, was paid for his services, and that Mr. Anderson and Plaintiff jointly marketed workers compensation insurance plans offered by Oriska. In addition, the government claimed to be able to prove that Plaintiff had knowledge of Mr. Anderson's criminal

43. The government claims that it would have been able to prove, and Plaintiff does not dispute, that he was aware of Mr. Anderson's criminal history and that Mr. Anderson was performing services related to the business of insurance.

44. However, the government did not assert, in the plea proceeding, that it would have been able to prove that any conduct constituted fraud or dishonesty, or that Plaintiff engaged in any fraudulent or dishonest conduct.

### E. The future of Oriska

45. In March 2009, Plaintiff entered into a contract to sell Oriska to a company called IQ Solutions Inc., owned by Irving Q. Hurdle, Jr.. Mr. Hurdle has served as the President of

Oriska since November 2009, in anticipation that the sale of Oriska will be consummated as soon as he can obtain the necessary financing to complete his purchase.

46. Mr. Hurdle's Affidavit in support of Plaintiff's application for a § 1033 waiver explains that he would like to hire Plaintiff as the risk manager for Oriska. Mr. Hurdle would like to utilize Plaintiff's past experience to help rebuild Oriska and to enable it to fulfill its mission of providing an important resource "to accommodate the special needs of disadvantaged businesses."

### F. Current Department proceedings against Plaintiff

47. In exploring the utilization of a voting trust for Oriska shares it became evident that such a voting trust was incompatible with the operation and sale of Oriska and it would clearly frustrate the ultimate for the disposition of Oriska by transfer to Mr. Hurdle.

48. However, Plaintiff has been advised by the Department that, in the Department's opinion, his conviction for violating 18 U.S.C. § 1033 (e) (1) (B) bars him not only from participating in the business of insurance, but also from continuing to own a controlling interest in Oriska.

49. Plaintiff's attorney was advised, at a meeting held at the Department's offices in New York City on February 1, 2011, that Plaintiff could only continue to own stock in Oriska if he had a waiver of the prohibition imposed by § 1033 (e) (1) (A) pursuant to § 1033 (e) (2).

50. Consequently, Plaintiff filed an application for a § 1033 waiver with the Department on or about February 18, 2011, supported by extensive documentation, including the affidavit from Mr. Hurdle.

51. The Department has advised Plaintiff, by letter dated May 26, 2011, that his application for a § 1033 waiver will be denied because he has been deemed to be "untrustworthy." The letter stated that Plaintiff could request a hearing to challenge this denial.

52. The Department served a Citation, dated July 27, 2011, alleging that Plaintiff had demonstrated "untrustworthiness" under § 1506 (c) (1) (A) of the New York State Insurance Law, and should be directed to divest his interest in Oriska and/or be removed as a controlling person of Oriska. This would entail requiring Plaintiff to divest himself of his stock in IPA pursuant to § 1501 (a) (2) of the Insurance Law.

53. The Citation lists four specifications to allegedly demonstrate untrustworthiness: 1) the employment of Mr. Anderson, 2) the criminal conviction for violating § 1033 (e) (1) (B), 3) the suspension from the practice of law as a result of the conviction, and 4) the failure to transfer his ownership interests in IPA and Oriska to a voting trust as he was directed to do or allegedly promised to do when he entered the plea of guilty. All of these specifications are the direct result of Plaintiff's criminal conviction for permitting Mr. Anderson to participate in the insurance industry.

54. The Department served a notice of hearing, dated July 27, 2011, stating that a hearing will be held on September 14, 2011 "to review the determination denying [Plaintiff's] application for [a § 1033 waiver]." Plaintiff's counsel has been advised by Beth Cohen, the attorney who will be representing the Department with respect to the two proceedings, that she plans to introduce evidence pertaining to both the denial of the application for a § 1033 waiver and the Citation seeking his removal as a controlling person for Oriska in the same proceeding.

55. Mr. Burns served answers to the Citation and the notice of hearing with respect to the denial of the § 1033 waiver, as well as a motion for severance and separate proceedings for the denial of the waiver and on the Citation seeking Plaintiff's removal.

## As and for a First Cause of Action
## (§ 1033 (e) (1) (A) does not require divestiture of ownership)

56. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth in full herein.

57. Although 18 U.S.C. § 1033 prohibits certain individuals from "willfully engag[ing] in the business of insurance... or participat[ing] in such business," but the statute does not require an individual who owns a controlling interest in an insurance company to forfeit such interest based upon a criminal conviction.

58. The business of insurance is defined by § 1033 (f) (1) to mean the writing of insurance, and the reinsuring of risks, "including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act, as, or are, officers directors agents or employees of insurers or other persons authorized to act on behalf of such persons."

59. Plaintiff's ownership of a controlling interest in Oriska does not constitute engaging in the business of insurance.

60. Consequently, the statutory bar of § 1033 does not prohibit Plaintiff from maintaining his ownership interest in Oriska and the Department cannot legally require him to divest his interest because of his conviction under § 1033.

## As and for a Second Cause of Action
## (Lifetime Occupational Disbarment of § 1033 (e) (1) (A)
## does not apply to an individual convicted of § 1033 (e) (1) (B))

61. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth in full herein

62. Section 1033 (e) (1) (A) prohibits individuals convicted of two types of felonies from engaging in the insurance industry: individuals who have been convicted of 1) felonies involving "dishonesty or breach of trust," or 2) "offenses under § 1033."

63. The Congressional purpose behind this occupational debarment is to ensure that individuals who have been convicted of crimes involving a breach of trust, specifically including crimes pertaining to the insurance industry, should not be permitted to work within the industry.

64. Congress did not intend to impose a penalty of debarment upon individuals who have been convicted of all felonies, nor did it intend to impose the penalty of debarment upon individuals convicted of strict liability offenses strict liability or *malum prohibitum* offenses, such as § 1033 (e) (1) (B).

65. The legislative history demonstrates that the lifetime bar of § 1033 (e) (1) (A) was not intended to be imposed upon individuals convicted solely of violating § 1033 (e) (1) (B).

66. A stricter construction of the debarment imposed by § 1033 (e) (1) (A), to clarify that it was not intended to apply to individuals in Plaintiff's position, is mandated by the United States Supreme Court's decisions in McNally v. U.S., 483 U.S. 350 (1987) and Skilling v. U.S., 130 S.Ct. 2896 (2010).

## As and for a Third Cause of Action
## (§ 1033 (e) (1) (A) violates the Equal Protection clause as applied to Plaintiff)

67. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth in full herein.

68. 18 U.S.C. § 1033 (e) (1) (A) defines two classes of individuals: individuals who have been convicted of certain crimes that warrant debarment from the business of insurance, and individuals who have been convicted of other crimes that do not warrant debarment.

69. Upon information and belief, this distinction is based upon a Congressional determination that crimes pertaining to dishonesty and breach of trust may warrant debarment from the business of insurance, which requires a high level of trust, while other crimes may not warrant the civil penalty of debarment.

70. Plaintiff was convicted of violating § 1033 (e) (1) (B), which does not involve any breach of trust or dishonesty, but is instead, a strict liability statute.

71. Nevertheless, the Department proposes to impose the penalty of debarment upon Plaintiff by characterizing his conviction as an offense warranting debarment.

72. There is no rational reason or legitimate government purpose served by characterizing a conviction for a strict liability statute as warranting the penalty imposed for convictions involving breaches of trust or dishonesty.

73. The distinction between individuals convicted of violating § 1033 (e) (1) (B) and individuals convicted of other felonies cannot be sustained under a rational relation test, and since there is no rational reason or legitimate governmental interest promoted by this distinction, the statute 18 USC § 1033 (e) (1) (B) violates the equal protection guarantees of the Fourth and Fourteenth Amendments to the United States Constitution.

### As and for a Fourth Cause of Action
### (The Department's action violated Plaintiff's
### right to substantive due process)

74. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth in full herein

75. Plaintiff has a property interest in his ownership of IPA and indirect ownership of Oriska.

76. He also has a property interest in not being debarred from employment in the insurance industry.

77. The Department's action in insisting that Plaintiff apply for a § 1033 waiver, denying his application, and then serving him with a Citation seeking to deprive him of his ownership interest constitutes a taking of property in violation of Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

**Wherefore**, Plaintiff demands declaratory relief that:

1. Plaintiff is not subject to the occupational debarment of 18 U.S.C. § 1033 (e) (1) (A) and is not required to divest himself of his direct or indirect ownership interest in an insurance company,

2. Plaintiff as an individual who is convicted of 18 U.S.C. § 1033 (e) (1) (B) is not subject to the occupational debarment set forth in § 1033 (e) (1) (A) and is not required to obtain a waiver pursuant to § 1033 (e) (2) as a precondition to engaging in the business of insurance,

3. An injunction enjoining the New York State Department of Financial Services from proceeding with any hearings or administrative action to require Plaintiff to forfeit or divest his controlling interest in Oriska pursuant to § 1506 of the New York State Insurance Law based upon 18 USC 1033,

4. An injunction enjoining the New York State Department of Financial Services from prohibiting Plaintiff from engaging in the business of insurance, because of his conviction for violating § 1033 (e) (1) (B),

5. An award of attorneys' fees on all constitutional claims against the New York State Department of Financial Services pursuant to 42 U.S.C. § 1988,

6. An award of attorneys' fees for all claims against the United States of America pursuant to 28 U.S.C. § 2412,

7. Such other and further relief as to the Court may seem just, proper and equitable.

Dated: October 10, 2011
       Utica, New York

KERNAN AND KERNAN, P.C.

by *Leighton R Burns*
Leighton R. Burns, Esq., of Counsel
Bar Roll No. 101250
Attorney for Plaintiff
Address and Post Office Address
185 Genesee Street, Suite 1401
Utica, New York 13501
Telephone: (315) 797-8300

## VERIFICATION

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF HERKIMER )

James M. Kernan being duly sworn, deposes and says that deponent is the plaintiff in the within action, that deponent has read the foregoing complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____
James M. Kernan

Sworn to before me this 10th
day of October, 2011

_____

**LEIGHTON R. BURNS**
**NOTARY PUBLIC, STATE OF NEW YORK**
**HERKIMER COUNTY, REG. NO 02BU5538695**
**MY COMMISSION EXPIRES OCT. 31, 2014**